IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| BLAYNE D. K. FREITAS, SR, | ) | CIVIL NO. 12-00358 |
| | ) | CIVIL NO. 12-00359 SOM/KSC |
| Plaintiff, | ) | (Consolidated Cases) |
| | ) | |
| vs. | ) | ORDER GRANTING DEFENDANT'S |
| | ) | MOTION FOR SUMMARY JUDGMENT |
| KYO-YA HOTELS & RESORTS, LP | ) | |
| DBA SHERATON PRINCESS | ) | |
| KAIULANI, a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |
| JUN S. ANUNCIACION, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| KYO-YA HOTELS & RESORTS, LP | ) | |
| DBA SHERATON PRINCESS | ) | |
| KAIULANI, a Delaware | ) | |
| corporation, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

**I.       INTRODUCTION.**

In these consolidated employment discrimination cases,

Plaintiffs Blayne Freitas, Sr., and Jun Anunciacion sue Defendant

Kyo-ya Hotels and Resorts, alleging that they were subjected to a

hostile work environment and terminated based on their ages,

races, and national origins, and in retaliation for having

objected to the alleged discrimination.  Kyo-ya moves for summary

judgment on all claims asserted in the Complaints.

The claims before the court on the present motion are for disparate treatment, hostile work environment, and retaliation in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e-2(a), and the Age Discrimination in Employment Act, 29 U.S.C. § 623 (Counts I, II, and IV), as well as for intentional infliction of emotional distress (IIED) and defamation (Counts III and V).[1]  Freitas also sues for retaliation under Haw. Rev. Stat § 378-2.   The court grants Kyo-ya's motion for summary judgment as to all claims asserted in the Complaints.

II.       **FACTUAL BACKGROUND.**

Blayne Freitas is a native Hawaiian who was 51 years old when he was terminated from his position as a utility steward at the Sheraton Princess Ka'iulani, the hotel name under which Kyo-ya does business.  See Declaration of Blayne Freitas ¶¶ 6-9, ECF No. 41-1.  Jun Anunciacion, who was also a utility steward at the Sheraton Princess Ka'iulani, is of Filipino descent and was also 51 years old when he was terminated.  See Declaration of Jun Anunciacion, ¶¶ 3-6, ECF No. 41-6.  Kyo-ya asserts that

---

[1] In their memorandum in opposition to Kyo-ya's motion, Freitas and Anunciacion appear to argue that there are genuine issues of material fact only as to Count I (discrimination) and Count IV (retaliation).  Nevertheless, because Plaintiffs do not expressly abandon their other claims, this court addresses all five counts.

Plaintiffs were fired based on their alleged extortion and harassment of co-worker Wing Chan.

On October 5, 2011, Robert Kubota, an assistant manager at the hotel, was informed by two other Kyo-ya employees that Chan was being treated "in a demeaning way" by Freitas.  See Declaration of Mark Hirokawa, ¶ 2, ECF No. 35-1.  Kubota asked Chan whether these allegations were true, and Chan responded that he was being regularly coerced by both Freitas and Anunciacion into paying them small amounts of money.  Id. ¶ 3.  Chan told Kubota that Freitas and Anunciacion were asking him to pay two dollars each time he requested the tray of drinking glasses he needed to set up tables at the hotel's restaurant.  Id.  Chan also told Kubota that this had been going on for about three months.  Id.  Kubota conveyed this information to Mark Hirokawa, the human resources manager at the hotel, and Hirokawa conducted an investigation into the matter.  Id. ¶ 4.

Hirokawa spoke to Chan, who confirmed his prior allegations and added that "he felt threatened and had been punched in the body on several occasions [by Freitas and Anunciacion] when he had refused to pay."  Id. ¶ 6.  Chan also said that Freitas and Anunciacion had told him that "he was homosexual because he touched them and that, if he did not pay them, they would go to Security and make him lose his job by reporting that he is homosexual."  Id.

3

As part of the investigation, Hirokawa and Frank Fujii, the security director at the hotel, arranged for Chan to carry eight marked dollar bills to his next encounter with Anunciacion and Freitas.  When Freitas and Anunciacion were interviewed later that day, the bills were found in their possession.  Id. ¶ 13. According to Hirokawa and Fujii, Anunciacion afterwards "admitted to threatening Chan and to knowing that this was wrong."  Id. ¶ 11.  Anunciacion also signed a document confirming his admission, after allegedly being given the opportunity to review and make changes to it.  See Interview with Jun Anunciacion, ECF No. 35-6. Based on this admission, Anunciacion was suspended that day, pending further investigation.  Hirokawa Decl. ¶ 14.  Freitas denied Chan's allegations and was not suspended.  Id. ¶ 12.

Over the next week, Hirokawa and his colleagues interviewed 14 other hotel employees regarding the allegations. Id. ¶ 18.  According to Hirokawa, one employee, Mark Medrano, said that he had heard Freitas and Anunciacion tell Chan "you owe me money" up to five times, and had heard Freitas threaten Chan with statements such as "come here, I'll choke you" and "I like to beat you up."  Id. ¶ 23.  Hirokawa was also told by Medrano that Chan avoided areas where Freitas and Anunciacion were, out of fear for his safety.  Id.

Another employee, Colleen Sanchez, told Hirokawa that she saw Chan "hold his wallet open" for Freitas and Anunciacion

4

with an expression that "indicated 'help me.'"  Id. ¶ 24.
Another employee, Michael Sato, told Hirokawa that Chan was being
forced to give Freitas money, and that he had witnessed Freitas
racially abuse Chan.  Id. ¶ 25.

     After they were accused of harassing and extorting
Chan, Freitas and Anunciacion made several of their own
allegations against Chan.  In particular, Anunciacion accused
Chan of having sexually harassed him, by "touching [him], asking
for kisses, and hugging [him]".  Anunciacion Decl. ¶ 29.

     On October 28, 2011, Hirokawa prepared a report based
on his investigation that "recommended that Freitas and
Anunciacion be terminated, and that Chan be given either a
written warning or a 3-day suspension based on the allegations
about his behavior toward Plaintiffs."  Hirokawa Decl. ¶ 22.
During the investigation, Hirokawa had been in contact with two
senior decision-makers--Frederick Orr, the hotel's general
manager, and Debbie Stephens-Amas, the hotel's human resources
director.  Id. ¶ 27.  On the day he submitted his report,
Hirokawa met with Orr and Stephens-Amas to discuss his
recommendations.  Id.

     Orr was aware that both Freitas and Anunciacion had had
disciplinary problems in the past.  In 2000, Freitas had been
suspended for 20 days for having allegedly threatened to shoot a
co-worker.  Orr Decl. ¶ 9-10.  Anunciacion had previously been

given a written warning for having verbally harassed a co-worker.
Id. ¶ 18.

Orr, Stephens-Amas, and Hirokawa agreed to terminate
Freitas and Anuninciacion effective October 31, 2011, and to
suspend Chan for three days.   Id.   After they were terminated,
Freitas and Anunciacion were charged in state court with the
crime of Extortion in the Third Degree based on their alleged
actions involving Chan.   ECF. No. 41-2.   A jury found them not
guilty.   Id.

Orr is currently 68 years old, and his wife is part-
Hawaiian.   Orr Decl. ¶ 9-10.   Stephens-Amas is currently 56 years
old, and her husband is of Filipino descent.   Stephens-Amas Decl.
¶ 8-9.   Hirokawa and Fujii are 50 and 58 years old, respectively.
Hirokawa Decl. ¶; Fujii Decl. ¶10.

## III.        SUMMARY JUDGMENT STANDARD.

Summary judgment shall be granted when "the movant
shows that there is no genuine dispute as to any material fact
and the movant is entitled to judgment as a matter of law."   Fed.
R. Civ. P. 56(a).   See Addisu v. Fred Meyer, Inc., 198 F.3d 1130,
1134 (9th Cir. 2000).   The movants must support their position
that a material fact is or is not genuinely disputed by either
"citing to particular parts of materials in the record, including
depositions, documents, electronically stored information,
affidavits or declarations, stipulations (including those made

6

for the purposes of the motion only), admissions, interrogatory answers, or other materials"; or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact."  Fed. R. Civ. P. 56(c).  One of the principal purposes of summary judgment is to identify and dispose of factually unsupported claims and defenses.  Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986).

Summary judgment must be granted against a party that fails to demonstrate facts to establish what will be an essential element at trial.  See id. at 323.  The burden initially falls on the moving party to identify for the court those "portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact."  T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987) (citing Celotex Corp., 477 U.S. at 323).  "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986) (footnote omitted).

The nonmoving party may not rely on the mere allegations in the pleadings and instead must set forth specific facts showing that there is a genuine issue for trial.  T.W. Elec. Serv., 809 F.2d at 630.  At least some "'significant

probative evidence tending to support the complaint'" must be produced.  Id. (quoting First Nat'l Bank of Ariz. v. Cities Serv. Co., 391 U.S. 253, 290 (1968)); see also Addisu, 198 F.3d at 1134 ("A scintilla of evidence or evidence that is merely colorable or not significantly probative does not present a genuine issue of material fact.").  "[I]f the factual context makes the non-moving party's claim implausible, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial."  Cal. Arch'l Bldg. Prods., Inc. v. Franciscan Ceramics, Inc., 818 F.2d 1466, 1468 (9th Cir. 1987) (citing Matsushita Elec. Indus. Co., 475 U.S. at 587).  Accord Addisu, 198 F.3d at 1134 ("There must be enough doubt for a 'reasonable trier of fact' to find for plaintiffs in order to defeat the summary judgment motion.").

        In adjudicating summary judgment motions, the court must view all evidence and inferences in the light most favorable to the nonmoving party.  T.W. Elec. Serv., 809 F.2d at 631. Inferences may be drawn from underlying facts not in dispute, as well as from disputed facts that the judge is required to resolve in favor of the nonmoving party.  Id.  When "direct evidence" produced by the moving party conflicts with "direct evidence" produced by the party opposing summary judgment, "the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact."  Id.

IV.        **ANALYSIS.**

      **A.   Disparate Treatment Claims.**

           Title VII of the Civil Rights Act of 1964 forbids
employment discrimination based on "race, color, religion, sex,
or national origin."  42 U.S.C. § 2000e-2(a).  The Age
Discrimination in Employment Act prohibits discrimination based
on age.  29 U.S.C. § 623(a)(1) ("It shall be unlawful for an
employer to . . . discriminate against any individual with
respect to his compensation, terms, conditions, or privileges of
employment, because of such individual's age.").

           "When responding to a summary judgment motion, the
plaintiff is presented with a choice regarding how to establish
his or her case."  McGinest v. GTE Serv. Corp., 360 F.3d 1103,
1122 (9th Cir. 2004).  First, the plaintiff may apply the burden-
shifting analysis set forth in McDonnell Douglas Corp. v. Green,
411 U.S. 792 (1973).  Under the McDonnell Douglas framework, a
plaintiff must establish a prima facie case of discrimination by
showing that (1) he belongs to a protected class; (2) he was
qualified for the position; (3) he suffered an adverse employment
action; and (4) similarly situated individuals outside of his
protected class were treated more favorably.  See Nicholson v.
Hyannis Air Serv., Inc., 580 F.3d 1116 (9th Cir. 2009).  Once a
plaintiff succeeds in presenting a prima facie case, "the burden
of production, but not persuasion, then shifts to the employer to

articulate some legitimate, nondiscriminatory reason for the challenged action." Chuang v. Univ. of Cal. Davis, Bd. of Trustees, 225 F.3d 1115, 1123-24 (9th Cir. 2000). "If defendant meets this burden, plaintiffs must then raise a triable issue of material fact as to whether the defendant's proffered reasons for their terminations are mere pretext for unlawful discrimination." Hawn v. Exec. Jet Mgmt., Inc., 615 F.3d 1151, 1155 (9th Cir. 2010).

A plaintiff can prove pretext "(1) indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable, or (2) directly, by showing that unlawful discrimination more likely motivated the employer. All of the evidence—whether direct or indirect—is to be considered cumulatively." Shelley v. Green, 666 F.3d 599, 609 (9th Cir. 2012)(internal quotation omitted).

Alternatively, a member of a protected class suffering an adverse employment action may rely solely on "direct evidence." "Direct evidence . . . is defined as evidence of conduct or statements by persons involved in the decision-making process that may be viewed as directly reflecting the alleged discriminatory attitude . . . sufficient to permit the *fact finder* to infer that that attitude was more likely than not [the cause of] the employer's decision." Enlow v. Salem-Keizer Yellow

Cab Co., Inc., 389 F.3d 802, 812 (9th Cir. 2004) (citation omitted) (emphasis in original).

Under Title VII, an "unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice." 42 U.S.C. § 2000e-2(m). For an ADEA claim, on the other hand, a plaintiff has "the burden of persuasion to establish that age was the 'but-for' cause of the employer's adverse action." Gross v. FBL Fin. Servs., Inc., 557 U.S. 167, 180 (2009). In other words, in an ADEA action, unlike a Title VII case, a plaintiff must do more than "produce some evidence that age was one motivating factor in [an employment] decision." Id. A plaintiff must show, at the summary judgment stage, that a reasonable trier of fact could conclude, by a preponderance of the evidence, that the plaintiff would not have been fired but for impermissible age discrimination. See, e.g., Scheitlin v. Freescale Semiconductor, Inc., 465 F. App'x 698, 699 (9th Cir. 2012) (applying Gross's "but for" causation standard at the summary judgment stage).

Freitas and Anunciacion do not attempt to produce any direct evidence of discrimination. Therefore, if they are to survive summary judgment, it must be on the basis of the McDonnell-Douglas framework. It is undisputed that Freitas and

11

Anunciacion meet the first three criteria for establishing a prima facie case.  Each is a member of at least one protected group under Title VII and is protected by the ADEA.  Kyo-ya does not dispute that Freitas and Anunciacion were qualified for the utility steward positions they had held for over 25 years.  Nor is there any dispute that they both sustained adverse employment actions when they were terminated from their positions on October 28, 2011.

However, Kyo-ya argues that Freitas and Anunciacion do not make out a prima facie case because they fail to adduce "evidence that [their termination occurred] under circumstances which give[s] rise to an inference of unlawful discrimination." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). In Title VII cases, such an inference can be drawn if similarly situated individuals outside of the relevant protected category are treated more favorably than the plaintiff.  See Chuang v. Univ. of California Davis, Bd. of Trustees, 225 F.3d 1115, 1123 (9th Cir. 2000).  For an ADEA claim, the inference can be drawn if the plaintiff is replaced by a substantially younger employee with equal or inferior qualifications.  See Diaz v. Eagle Produce Ltd. P'ship, 521 F.3d 1201, 1207 (9th Cir. 2008).

Freitas and Anunciacion do not point to a single "similarly situated" individual who was outside of their protected categories and treated more favorably than they were.

12

At most, Freitas and Anunciacion vaguely suggest they were treated less favorably than Chan, their alleged victim.  While, unlike Plaintiffs, Chan was Chinese, Chan and Plaintiffs were not similarly situated.  Chan worked in a different position within the hotel, and engaged in alleged conduct very different from what Freitas and Anunciacion allegedly did.  Vasquez v. Cnty. of Los Angeles, 349 F.3d 634, 641 (9th Cir. 2003) (noting that employees "are similarly situated when they have similar jobs and display similar conduct").

Freitas and Anunciacion do not even argue that discrimination can be inferred from the race or national origin of their replacements, or even suggest that they were replaced by employees of a different race or national origin from them.  Kyo-ya states that Anunciacion was replaced by an employee who, like Anunciacion, was of Filipino descent.  Neither Freitas nor Anunciacion alleges anything at all regarding the race or national origin of either's replacement.

Given the absence of evidence of an employee who was similarly situated but treated more favorably, a requirement for a Title VII claim, the court turns to Plaintiffs' ADEA claim.  Plaintiffs assert that Kyo-ya hired "two younger employees with less qualifications" to replace them.  Memo in Opp. at 15, ECF. No. 40.  The only pertinent information that either Plaintiff provides regarding the replacement employees is found in

13

Anunciacion's deposition testimony.  Anunciccion testified that he and Freitas were replaced by workers "in their early 30's" and that their first names were "Reynante" and "Danilo."  <u>See</u> Deposition of Jun Anunciacion at 74-78, ECF No. 35-33.  Freitas also testified in his deposition that one position was filled by someone name "Reynente," who was allegedly Filipino, but Freitas did not indicate his age.  See Freitas Depo. at 180-182, ECF No. 35-32.

A plaintiff cannot establish that he has been replaced by a substantially younger employee with equal or inferior qualifications when he "present[s] no specific evidence establishing the identity, age, or inferior qualifications of th[at] employee."  <u>Ritter v. Hughes Aircraft Co.</u>, 58 F.3d 454, 457 (9th Cir. 1995).  Anunciacion's vague recollection does not constitute the requisite "specific evidence."

Notwithstanding Anunciacion's vagueness, this court relies, for purposes of this motion, on Kyo-ya's admission that Anunciacion was replaced by a substantially younger employee. <u>See</u> Motion for Summary Judgment at 9, ECF No. 34-1 (stating that Anunciacion's position "was filled by Fredie Agra, who is 39 years old").  This however does not mean that Anunciacion makes out a prima facie case under the ADEA.  Nothing in the record speaks to the replacement employee's qualifications.

While "the requisite degree of proof necessary to establish a prima facie case for Title VII and ADEA claims on summary judgment is minimal and does not even need to rise to the level of a preponderance of the evidence," Coghlan v. Am. Seafoods Co. LLC., 413 F.3d 1090, 1094 (9th Cir. 2005), Kyo-ya's admission, absent any evidence that any replacement had equal or inferior qualifications when compared to Anunciacion, is insufficient to establish a prima facie case. Diaz, 521 F.3d at 1208, n.2 ("Generally, an employee can satisfy the last element of the prima facie case only by providing evidence that he or she was replaced by [an] . . . employee with equal or inferior qualifications.").

As to Freitas, Kyo-ya asserts that he was never replaced. See Motion for Summary Judgment at 9, ECF No. 34-1. Even assuming Freitas was indeed replaced by a younger employee, the record is again silent as to that replacement's qualifications.

Even if Freitas and Anunciacion were able to make out prima facie cases, Kyo-ya has provided a reason for Anunciacion's termination--the extortion and harassment of Chan--that is "[o]n its face . . . legitimate [and] nondiscriminatory." McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1137 (9th Cir. 2004).[2]

---

[2] Freitas and Anunciacion allege that Kyo-ya fails to articulate a legitimate reason for their termination because nearly all of Kyo-ya's evidence, much of it based on the interviews Hirokawa conducted as part of his investigation, is

"In response to [a] defendant's offer of nondiscriminatory reasons, the plaintiff must produce specific, substantial evidence of pretext . . . in order to avoid summary judgment."  Wallis v. J.R. Simplot Co., 26 F.3d 885, 890 (9th Cir. 1994) (internal citation omitted).  In support of their argument that their dismissal was pretextual, Freitas and Anunciacion suggest that Fujii "forced Chan to cooperate to orchestrate false accusations against [them] so that they could be terminated."  Memo in Opp. at 15, ECF No. 40.  During the hearing on Kyo-ya's motion for summary judgment, Plaintiffs' counsel suggested that Kyo-ya should therefore be liable under a "cat's paw" theory.  Under such a theory, "[t]he employer is at fault because one of its agents committed an action based on discriminatory animus that was intended to cause, and did in fact cause, an adverse employment decision."  Staub v. Proctor Hosp.,

---

inadmissible hearsay.  First, even without this evidence, Kyo-ya would still meet its burden of *articulating* a legitimate, nondiscriminatory reason for the termination decision.  See, e.g., Orr Decl. ¶ 8.  Second, Freitas and Anunciacion's argument reveals a basic misunderstanding about what is at issue in this case.  Kyo-ya introduces Hirokawa's statements not to prove the truth of Chan's allegations, but to demonstrate that Kyo-ya conducted a thorough and impartial investigation into the allegations against Freitas and Anunciacion.  See Calmat Co. v. U.S. Dep't of Labor, 364 F.3d 1117, 1124 (9th Cir. 2004) ("If the significance of an out-of-court statement lies in the fact that the statement was made and not in the truth of the matter asserted, then the statement is not hearsay.").

131 S. Ct. 1186, 1193 (2011).  According to Freitas and Anunciacion, even though Fujii and Hirokawa did not have ultimate decision-making authority, their discriminatory animus led them to "orchestrate" the "false allegations" that ultimately led to Plaintiffs' dismissal.

Freitas and Anunciacion provide absolutely no evidence of discriminatory animus on the part of Fujii or Hirokawa, let alone evidence that is "specific [and] substantial."  Instead, Plaintiffs rely entirely on conclusory assertions of discrimination.  "Mere assertions that [an employer] had discriminatory motivation and intent . . . [are] inadequate, without substantial factual evidence, to raise . . . a genuine issue of material fact as to pretext in order to avoid summary judgment."  Collings v. Longview Fibre Co., 63 F.3d 828, 834 (9th Cir. 1995) (internal quotation omitted).  Plaintiffs' bare and unsupported allegations of a discriminatory conspiracy to oust them do not come close to meeting the requirement of specific and substantial evidence.

Freitas and Anunciacion devote most of their briefing to arguing that the allegations Chan made against them were false.  However, "[i]n judging whether [a defendant's] proffered justifications [are] 'false,' it is not important whether they were objectively false . . . .  Rather, courts only require that an employer honestly believed its reason for its actions, even if

17

its reason is foolish or trivial or even baseless." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1063 (9th Cir. 2002) (internal quotation omitted).  Whether or not Freitas and Anunciacion were actually responsible for extorting Chan, they provide "no evidence that [Kyo-ya] did not honestly believe its proffered reasons [for termination]." <u>Id.</u>  Indeed, Freitas and Anunciacion do not even attempt to provide evidence--either direct or circumstantial--regarding their former employer's state of mind.  In their deposition testimony, both Freitas and Anunciacion indicate that they have no information regarding their bosses' beliefs about age, race or national origin.  <u>See</u> Freitas Depo. at 128-164, ECF No. 35-32;  Anunciacion Depo. at 78-85, ECF No. 35-33.  Instead, the only "evidence" they have of their employer's discriminatory animus is the fact that their supervisors were not of the same race or national origin as Freitas and Anunciacion, that someone younger took Anunciacion's place, and that Kyo-ya chose to terminate them.  <u>Id.</u>  This conclusory and circular chain of reasoning cannot defeat summary judgment on the disparate treatment claim in Count I.

**B.   Retaliation Claims.**

Title VII's anti-retaliation provision forbids "discriminat[ion] against an employee who has opposed any unlawful employment practice or who has made a charge, testified, assisted, or participated in a Title VII proceeding or investigation."  42 U.S.C. § 2000e-3(a).  To make out a prima

facie retaliation claim under Title VII, a plaintiff must show
that "(1) the employee engaged in a protected activity, (2) she
suffered an adverse employment action, and (3) there was a causal
link between the protected activity and the adverse employment
action." Davis v. Team Elec. Co., 520 F.3d 1080, 1093 (9th Cir.
2008); see also Schefke v. Reliable Collection Agency, Ltd., 96
Haw. 408, 426, 32 P.3d 52, 70 (2001) (applying federal standards
to retaliation claims under section 378-2). "[R]etaliation
claims must be proved according to traditional principles of
but-for causation." Univ. of Tex. Sw. Med. Ctr. v. Nassar, 133
S. Ct. 2517 (2013).

Freitas and Anunciacion devote a single line of their
opposition brief to their retaliation claim (Count IV), stating
that the "testimony of [Freitas] establishes that he complained
during his questioning of race/national origin discrimination
which supports the claim of retaliation." Memo in Opp. at 15,
ECF No. 40. The relevant "testimony" is itself a single line of
Freitas's deposition, in which he claims that he told Hirokawa
during questioning that he "thought [he] was being treated
unfairly because [he] was Hawaiian." Freitas Depo. at 45, ECF
35-32. Once again, however, Freitas and Anunciacion do nothing
more than assert a relevant causal relationship. Freitas's
statement came during Hirokawa's investigation. Nothing in the
record even suggests that Freitas and Anunciacion were terminated
because of an accusation of discrimination made *during* the

19

investigation into alleged conduct that was ultimately cited as the reason for their dismissal.  A reasonable juror could not conclude that Freitas and Anunciacion would still be employed by Kyo-ya "but for" Freitas's single-sentence, mid-investigation accusation of discrimination.

### C.   Hostile Work Environment Claims.

"In order to prevail on [a] hostile work environment claim, [a plaintiff] must show that her workplace [was] permeated with discriminatory intimidation . . . that [was] sufficiently severe or pervasive to alter the conditions of [their] employment and create an abusive working environment." Brooks v. City of San Mateo, 229 F.3d 917, 923 (9th Cir. 2000) (internal quotation omitted).  "[T]he required level of severity or seriousness varies inversely with the pervasiveness or frequency of the conduct." Nichols v. Azteca Rest. Enterprises, Inc., 256 F.3d 864, 872 (9th Cir. 2001).

The only evidence Freitas and Anunciacion offer in connection with their hostile work environment claim (Count II) relates to Chan's alleged sexual harassment.  The claim, however, is against Kyo-ya, not Chan, and there is no evidence that any supervisor at Kyo-ya even knew about Chan's alleged conduct, much less failed to take corrective action. See Swenson v. Potter, 271 F.3d 1184, 1191-92 (9th Cir. 2001) ("Title VII liability is direct, not derivative: An employer is responsible for its own actions or omissions, not for the co-worker's harassing conduct .

20

. . . [Therefore a]n employer cannot be held liable for misconduct of which it is unaware.").

Nor do Freitas and Anunciacion provide any evidence that their workplace was either "subjectively [or] objectively . . . perceived as abusive," <u>Fuller v. City of Oakland, Cal.</u>, 47 F.3d 1522, 1527 (9th Cir. 1995), and the frequency of Chan's alleged actions is totally unclear.  Plaintiffs simply do not have a viable hostile work environment claim.

### D.   State Law Claims.

Freitas and Anunciacion also bring state law claims for IIED and defamation (Counts III and V).  The defamation claim, which is not mentioned in Plaintiffs' Opposition to Kyo-ya's motion for summary judgment, is purportedly based on "defamatory statements regarding Plaintiffs' lack of competence" made "in the course of the [alleged] discrimination."  Complaint at 7, ECF No. 1-2.  To prove defamation under Hawaii law, Freitas and Anunciacion must establish four elements: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) negligence by the publisher; and (4) either actionability of the statement irrespective of special harm, or the existence of special harm caused by the publication.  <u>See</u> <u>Wilson v. Freitas</u>, 121 Hawai'i 120, 128, 214 P.3d 1110 (App.2009).  Freitas and Anunciacion never identify particular defamatory statements, state why any statement by Kyo-

21

ya was false, or specify any unprivileged publication to a third party.  In short, Freitas and Anunciacion do not even attempt to explain how their defamation claims meet the most elementary requirements of Hawaii law.

The same is true of Freitas's and Anunciacion's IIED claims.  Under Hawaii law, "the elements of the tort of intentional infliction of emotional distress are 1) that the act allegedly causing the harm was intentional or reckless, 2) that the act was outrageous, and 3) that the act caused 4) extreme emotional distress to another."  Hac v. Univ. of Haw., 102 Haw. 92, 106-07, 73 P.3d 46, 60-61 (2003).  Freitas and Anunciacion fail to allege how Kyo-ya's conduct was outrageous.  Nagata v. Quest Diagnostics Inc., 303 F. Supp. 2d 1121, 1127 (D. Haw. 2004) ("Liability [for IIED] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.") (quoting RESTATEMENT (SECOND) OF TORTS § 46, cmt. d (1965)).

In summary, Plaintiffs' claims under federal and state law cannot survive the present motion.  The evidence in the record suggests that Kyo-ya investigated allegations against Freitas and Anunciacion that were serious enough that they led to criminal extortion charges.  While Freitas and Anunciacion were ultimately found not guilty of extorting and harassing Chan, no

22

evidence suggests that Kyo-ya acted wrongfully or out of any impermissible animus.

**V.**        **CONCLUSION.**

Kyo-ya's motion for summary judgment is granted with respect to all claims alleged by Freitas and Anunciacion.

IT IS SO ORDERED.

DATED: Honolulu, Hawaii, November 18, 2013.



_/s/ Susan Oki Mollway_
Susan Oki Mollway
Chief United States District Judge

Blayne D.K. Freitas, Sr. v. Kyo-Ya Hotels and Resorts, LP dba Sheraton Princess Kaiulani, Civ. No, 12-00358; Jun S. Anunciacion v. Kyo-Ya Hotels and Resorts, LP dba Sheraton Princess Kaiulani, Civ. No. 12-00359 SOM/KSC (Consolidated Cases); ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT.